# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2024-NMCA-073**

**Filing Date: July 15, 2024**

**No. A-1-CA-40123**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JORDAN PADILLA,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Michael J. Thomas, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Offices of Marshall J. Ray, LLC
Marshall J. Ray
Albuquerque, NM

for Appellant

## OPINION

**YOHALEM, Judge.**

**{1}** This case raises a single issue for resolution by this Court on appeal: whether the State's nineteen-day delay in obtaining a search warrant for the contents of Defendant Jordan Padilla's tablet computer[1] was unreasonable, in violation of the Fourth

---

[1]In the record and briefing, Defendant's tablet is variously referred to as a computer, a tablet, or a laptop. It is described by the witnesses as a tablet that had a keyboard, and opened and closed like a laptop. We refer to it as a "tablet."

Amendment of the United States Constitution.[2] Federal law provides that a temporary warrantless seizure supported by probable cause and designed to prevent the loss of evidence is constitutional so long as "the police diligently obtained a warrant in a reasonable period" of time. *Illinois v. McArthur*, 531 U.S. 326, 334 (2001). The district court concluded, after weighing Defendant's diminished possessory interest in the tablet and the legitimate interests of law enforcement, that under the circumstances, the nineteen-day delay between when the tablet was seized and when a search warrant was obtained was reasonable under the Fourth Amendment. We agree and affirm.

**BACKGROUND**

**{2}** On January 13, 2020, Defendant left his tablet in the living room of his girlfriend's (Girlfriend) house. The tablet was not password protected. Girlfriend, for reasons unrelated to this case, opened the tablet and viewed its content. She found videos of children engaged in sexual acts, as well as a video of Defendant sexually abusing a child under thirteen years of age. Horrified and frightened, Girlfriend sought advice from her friend, showing her the videos, as well as seeking advice from Girlfriend's mother (Mother). Concerned about having contraband in her possession, Girlfriend gave the tablet to Mother for safekeeping.

**{3}** On January 15, 2020, Mother called the New Mexico Attorney General's Office and reported that her daughter had viewed what appeared to be child pornography on Defendant's tablet. Mother stated that she wanted to turn the tablet over to police, and provided Girlfriend's phone number so that law enforcement could contact her. An agent was assigned to investigate the allegations against Defendant. The agent promptly attempted to contact Girlfriend at the phone number provided on Mother's message. Girlfriend hung up on him and would not respond to his voice messages. Unable to reach Girlfriend, the agent went to Mother's house to pick up the tablet. Mother's partner, who was at the house, called Girlfriend and put her on speaker phone so that the agent could talk to her. Girlfriend told the agent that she had seen several videos of what she believed was child pornography, as well as a video showing Defendant sexually abusing a child. Based on information provided by an Albuquerque Police Department detective about a phone call from Girlfriend's friend to the Children, Youth and Families Department, the agent learned that Defendant might be able to remotely remove files from the tablet. The agent took possession of the tablet and placed it in a Faraday bag that would prevent Defendant from remotely accessing it. Defendant does not challenge on appeal that law enforcement had probable cause to seize his tablet, or that exigent circumstances justified the seizure in order to prevent Defendant from altering its contents.

---

2Defendant also contends that the delay in obtaining a search warrant was unconstitutional under Article II, Section 10 of the New Mexico Constitution. Defendant fails to provide a developed argument in support of his claim that the New Mexico Constitution should be construed differently than the United States Constitution. We, therefore, address Defendant's claim under the Fourth Amendment of the United States Constitution.

**{4}** The agent drafted an affidavit for a warrant to search the contents of the tablet the same day he seized it, relying on the telephone conversation with Girlfriend to establish probable cause. The next morning, the agent submitted his draft application for a search warrant to the prosecutor for approval. While awaiting approval, the agent continued his investigation. He made several appointments to interview both Girlfriend and her friend, but they repeatedly canceled or failed to show up. The agent testified that he wanted to interview them to see if their descriptions of the videos on the tablet were consistent with each other and to generally confirm the accuracy of what Girlfriend had told him on the phone. He finally was able to interview them at Girlfriend's house on January 24, 2020, nine days after seizing the tablet. The interview corroborated the information Girlfriend had provided over the telephone. The agent decided that no changes were necessary to the warrant application unless the prosecutor wanted more corroboration.

**{5}** Three days after his interview of Girlfriend and her friend, on January 27, 2020, still not having heard from the prosecutor, the agent sent a follow-up email. The prosecutor approved the warrant application the same day. The prosecutor reported that through an oversight, he had not seen the agent's initial email and the accompanying draft warrant application until he received the follow-up email. The agent got approval from a judge on February 3, 2020, to search the tablet, and executed the warrant the same day.

**{6}** Based on the contents of the tablet, as well as evidence discovered on other devices owned by Defendant and searched pursuant to separate warrants, Defendant was indicted on numerous counts of child sexual abuse and exploitation, among other charges. Prior to trial, Defendant filed a motion to suppress the contents of the tablet, claiming violations of both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution based on the State's nineteen-day delay in obtaining a search warrant. The district court held an evidentiary hearing on the motion. The agent testified and the affidavit for the search warrant, the agent's initial report, and the warrant itself were admitted into evidence.

**{7}** The district court entered extensive findings of fact and, after weighing all of the circumstances, concluded that, although the State "did not act with 'perfect' diligence," the delay was not unreasonable under the Fourth Amendment or the New Mexico Constitution.

**{8}** Defendant was tried and convicted by a jury on twenty-five counts and sentenced to fifty seven years in prison. Defendant challenges his convictions on appeal solely on the basis that the contents of his tablet should have been suppressed and excluded from evidence at trial because of unreasonable delay by the State in obtaining a search warrant. Defendant contends that evidence subsequently found on his other devices must be suppressed as well because its discovery can be traced to the search of his tablet and thus it is inadmissible as "the fruit of the poisonous tree."

**DISCUSSION**

## I.        Standard of Review

**{9}**        "Appellate review of a district court's decision regarding a motion to suppress evidence involves mixed questions of fact and law." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. If facts are in dispute, we will defer to the district court's findings of fact if they are supported by substantial evidence. *See id.* In this case, Defendant accepts the district court's findings of fact, but argues that when the appropriate legal standard is applied to these facts, suppression of the evidence obtained from his tablet is required under both federal and state constitutional standards. When "[t]he parties do not dispute the pertinent facts," *State v. Tapia*, 2018-NMSC-017, ¶ 10, 414 P.3d 332, "[w]e then review the application of the law to those facts, making a de novo determination of the constitutional reasonableness of the search or seizure." *State v. Martinez*, 2018-NMSC-007, ¶ 8, 410 P.3d 186 (internal quotation marks and citation omitted).

## II.        The Delay Was Reasonable Under the Fourth Amendment to the United States Constitution

**{10}**        We first reiterate that Defendant does not dispute that law enforcement had probable cause to seize his tablet and that exigent circumstances justified its seizure. It is also undisputed that law enforcement did not search the contents of the tablet until *after* a warrant was obtained. Therefore, the sole issue for our review is whether the State's nineteen-day delay in obtaining a search warrant was reasonable under the Fourth Amendment to the United States Constitution.

**{11}**        Federal law provides that a temporary warrantless seizure of a container (be it luggage or a computer) supported by probable cause and designed to prevent the loss of evidence is constitutional so long as "the police diligently obtained a warrant in a reasonable period of time." *McArthur*, 531 U.S. at 334. In determining whether a delay in obtaining a warrant is reasonable, the Fourth Amendment requires courts to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983); *see United States v. Jacobsen*, 466 U.S. 109, 124 (1984) ("[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'"). "[W]hen we balance these competing interests we must take into account whether the police diligently pursued their investigation." *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012) (alteration, internal quotation marks, and citation omitted). The reasonableness of the delay "will reflect a careful balancing of governmental and private interests" "in light of all the facts and circumstances, . . . on a case-by-case basis." *United States v. Mitchell*, 565 F.3d 1347, 1351 (11th Cir. 2009) (per curiam) (internal quotation marks and citations omitted). "There is unfortunately no bright line past which a delay becomes unreasonable." *Burgard*, 675 F.3d at 1033.

**{12}** Turning first then to evaluate the strength of Defendant's private interests, we note that federal courts uniformly have held that seizure of a computer invades an individual's possessory interests under the Fourth Amendment. *See United States v. Mays*, 993 F.3d 607, 617 (8th Cir. 2021); *United States v. Laist*, 702 F.3d 608, 616 (11th Cir. 2012); *Burgard*, 675 F.3d at 1034; *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013). The case law acknowledges the significant role that computers play in both the personal affairs and the business affairs of their owners. *See United States v. Andrus*, 483 F.3d 711, 718 (10th Cir. 2007) ("A personal computer is often a repository for private information the computer's owner does not intend to share with others."), *clarified on denial of reh'g by*, 499 F.3d 1162 (10th Cir. 2007) (order); *Laist*, 702 F.3d at 616 (providing that "the possessory interest in a computer derives from its highly personal contents").

**{13}** Courts have found that a defendant's possessory interest in a computer, however, is diminished under a number of circumstances. These include, as relevant here, when the computer is taken from another person rather than directly from the possession of the defendant; when the computer's contents lack password protection or other security; and when the individual fails to make diligent efforts to have the computer returned. *See, e.g.*, *Burgard*, 675 F.3d at 1033-34 (inferring that an individual's possessory interest is diminished where the device was relinquished to a third party, and the individual neither checked on the device nor sought assurances of its swift return); *United States v. Sparks*, 806 F.3d 1323, 1339 (11th Cir. 2015) (considering the lack of password protection, that seizure occurred from another person rather than from the defendant, and that the defendant failed to diligently seek recovery as indicative of a diminished possessory interest), *overruled on other grounds by United States v. Ross*, 963 F.3d 1056 (11th Cir. 2020).

**{14}** Applying these factors to Defendant's possessory interest in his tablet, we conclude that Defendant's interest was diminished by each of these factors. Defendant left his tablet in Girlfriend's living room and it was seized from Mother rather than from Defendant. The tablet was not password protected, despite Defendant being skilled in computer technology, and could be easily accessed by anyone. Defendant did not immediately remember where he had left the tablet. When he learned he had left it at Girlfriend's, he waited until the next day to contact her, and rather than take it back immediately, asked her to hide it "somewhere safe." He also had left his tablet at her house on numerous prior occasions. We agree with the district court that evidence that prior to the seizure of the tablet, Defendant made inquiries of Girlfriend by telephone about whether she had the tablet was not sufficient to outweigh the evidence supporting a general disregard for both his possessory interest in the tablet and the privacy of its content.

**{15}** Turning next to the other side of the scale—the government's interests—we note that a government interest based on probable cause to believe a computer contains child pornography, as was the case here, weighs more heavily in favor of the government than a seizure made with only reasonable suspicion. *See Burgard*, 675 F.3d at 1033. Additionally, we are directed by case law to examine the reasons for the

delay and whether law enforcement "diligently pursued their investigation" during the time period at issue. *See Laist*, 702 F.3d at 614 (alteration, internal quotation marks, and citation omitted). As previously noted, "[t]here is . . . no bright line past which a delay becomes unreasonable." *Burgard*, 675 F.3d at 1033. In determining whether law enforcement was diligent, federal courts look for evidence of "careful, attentive police work." *Id.* at 1034 (recognizing that such diligence should not be discouraged "even if it appears to us that [the investigation] could or should have moved more quickly").

**{16}**    If the delay occurred because investigators pursued other assignments or because law enforcement was short-handed, courts look to whether the focus on other work was supported by legitimate law enforcement interests, and whether there were other personnel who readily could have taken over and obtained the warrant. *See Christie*, 717 F.3d at 1163-64 (holding that a five-month delay in obtaining a warrant was not constitutionally unreasonable where the government agent conducting the investigation was diverted to an undercover operation that was a higher law enforcement priority and there was no evidence the case could have been reassigned given the office workload); *see also Mitchell*, 565 F.3d at 1352-53 (holding a three-week delay unreasonable but noting that the ruling might be different if the government had shown the need to "diver[t] . . . law enforcement personnel to another case").

**{17}**    Defendant claims that law enforcement was not reasonably diligent when it took nineteen days to obtain a search warrant after seizing his tablet primarily because the agent had drafted an application for a warrant on January 15, 2020, and submitted it for prosecutorial approval on January 16, 2020, the day after the State took possession of the tablet. Defendant argues that the agent's explanation "about needing to do further investigation is therefore an unpersuasive post hoc rationale" and does not justify the eleven-day delay in obtaining the prosecutor's approval or the few remaining days after that.

**{18}**    Although it is true that the agent immediately drafted an affidavit outlining evidence of probable cause to search Defendant's tablet based solely on his telephone conversation with Girlfriend, and that the prosecutor ultimately approved that draft, we do not believe that these facts suffice to show a lack of diligence by law enforcement in investigating these crimes and in obtaining a search warrant. First, immediately drafting an application for a warrant has been recognized as showing diligence by law enforcement in pursuing an investigation, even if the warrant was not immediately obtained. *See Laist*, 702 F.3d at 618. In this case, the agent promptly drafted a warrant application and then continued his investigation rather than simply waiting for the warrant application to be approved or denied by the prosecutor. The agent sought to confirm the accuracy of Girlfriend's description of the videos as child pornography and her identification of Defendant as a perpetrator shown in a video she viewed on the tablet. He sought in-person interviews with both Girlfriend and her friend to confirm that the person they claimed to have seen depicted in a video was Defendant, and that they were in agreement about the pornographic nature of the material they had seen on the tablet. The agent expressed concern in his testimony at the suppression hearing that Girlfriend may not have been forthcoming in her description of the contents of the tablet

when he talked to her on the telephone because Mother's partner was listening to the conversation. Defendant presented no evidence of any significant delay in this investigation. Although the agent took nine days to complete the interviews of Girlfriend and her friend, we agree with the district court that he acted diligently, making numerous attempts to interview them, and finally succeeding, despite their attempts to avoid him.

**{19}** Defendant also argues that the district court improperly attributed the remaining delay to the agent's heavy workload. The agent was in an office with only five other agents collectively responsible for internet crimes throughout the state, and was completing cases from his previous law enforcement job at the time of this investigation.

**{20}** Finally, Defendant argues that eleven days of the delay are attributable to the prosecutor's negligence in failing to see the agent's email and respond and claims, relying on *Mitchell*, that this delay was unreasonable under the Fourth Amendment. In *Mitchell*, the court concluded that a twenty-one-day delay by law enforcement in obtaining a search warrant for a computer was unreasonable because the agent had all of the information he needed on the date the computer was seized, and yet did not begin to prepare the probable cause affidavit until after first delaying for two days, without any explanation, and then attending a two-week training course before turning to the warrant. *See* 565 F.3d at 1351. The decision in *Mitchell* turned on the agent's failure to offer any law enforcement justification for the delay. The agent testified that he "didn't see any urgency of the fact that there needed to be a search warrant during the two weeks that he was gone." *Id.* (alteration and internal quotation marks omitted). Concluding that the agent was simply indifferent to the defendant's Fourth Amendment rights, the court found the delay unreasonable and suppressed the evidence obtained from the search of the computer. *Id.* at 1353.

**{21}** Here, although the prosecutor overlooked the agent's email, "imperfection is not enough to warrant" a finding that law enforcement was not sufficiently diligent in pursuing a warrant. *See Burgard*, 675 F.3d at 1034. Neither the prosecutor's, nor the agent's delay in this case was "the result of complete abdication of [their] work or failure to 'see any urgency'" in pursuing a warrant—the basis for the court's decision finding the delay unreasonable in *Mitchell*. *See Burgard*, 675 F.3d at 1034 (quoting *Mitchell*, 565 F.3d at 1351). As discussed above, the agent acted diligently to investigate and to confirm the accuracy of the evidence included in his warrant application throughout the nineteen-day period. When he was not actively pursuing, this investigation, the evidence shows, and the district court found, that the agent was paying attention to other legitimate law enforcement commitments. The evidence does not reflect the indifference to the defendant's rights found to be dispositive in *Mitchell*.

**{22}** In balancing the State's interest and Defendant's interests under the circumstances of this case, we weigh the State's diligence in pursuit of its investigation as described above against the harm to Defendant's possessory interest caused by the nineteen-day delay in obtaining a warrant. The record reveals little or no harm to Defendant's possessory interest to weigh in the balance. Possibly because the tablet was one of many electronic devices that he owned, Defendant did not actively assert his

interest in its return, did not password-protect it, and carelessly left it at Girlfriend's house, allowing the child pornography it contained to be readily accessed. These facts, as set forth above, diminish Defendant's possessory interest in the tablet. Considering all of the circumstances, then, we affirm the district court's well-reasoned conclusion that the State's nineteen-day delay was constitutionally reasonable.

**{23}** Because we uphold the constitutionality of the nineteen-day delay, and affirm the denial of Defendant's motion to suppress the evidence found on his tablet, we do not address Defendant's argument that evidence from his other devices should have been suppressed under the exclusionary rule as the fruit of the poisonous tree.

**CONCLUSION**

**{24}** For the above reasons, we affirm the district court's denial of Defendant's motion to suppress and Defendant's conviction.

**{25} IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**SHAMMARA H. HENDERSON, Judge**